IRVINE MAYNARD AND CRYSTAL BLOCK COAL COMPANY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, AND U. S. STEEL CORPORATION

(No. 13956)

Decided December 13, 1977.

*Love, Wise, Robinson & Woodroe, George W. S. Grove, Jr.,* for appellant.

*George G. Burnette, Jr.,* for appellees.

HARSHBARGER, JUSTICE:

United States Steel Corporation appealed an order of the Workmen's Compensation Appeal Board dated April

1, 1977 that affirmed a ruling of the Workmen's Compensation Commissioner granting Irvine Maynard a 20% permanent partial disability award for occupational pneumoconiosis and charging 87.68% of the award to United States Steel and 12.32% to Crystal Block Coal Company.

Maynard has spent approximately 18 years in the coal industry in West Virginia. He is a railroad car loader and works directly under the tipple. He worked for Crystal Block from 1956 through 1970, (except for three inconsequential brief periods), most recently at its mining operation at Thacker, Mingo County. When United States Steel assumed operation of the Thacker mine on June 1, 1970, Maynard remained in United States Steel's employ, and on January 16, 1973, filed his claim for occupational pneumoconiosis.

The evidence was that Maynard had occupational pneumoconiosis in 1959 when he worked for Crystal Block, although he was apparently unaware that he was afflicted until 1970; and that x-rays taken in November 1970, about five months after U. S. Steel took over the mine, revealed perceptible aggravation of the disease compared to his 1959 condition.

Physicians for the Occupational Pneumoconiosis Board testified that in their opinion the perceptible aggravation probably could not have occurred in just the five months claimant had worked for United States Steel before the 1970 x-rays were made. One physician stated he was certain that most of it took place while Maynard worked for Crystal Block. There is also evidence that Maynard responded well to therapy and his pulmonary efficiency increased between 1972 and 1974, and that there was less dust in claimant's work environment after United States Steel took over the mine.

*W.Va. Code*, 23-4-1 (1971), establishes to whom the Workmen's Compensation Commissioner shall disburse

the compensation fund and defines occupational pneumoconiosis and other occupational diseases.[1]

---

[1] *W.Va. Code*, 23-4-1, in material part, is as follows:

Subject to the provisions and limitations elsewhere in this chapter set forth, the commissioner shall disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of the premiums for the quarter in which the injury occurs, and in case of catastrophe, in addition to the employees next above described, to the employees of employers who have elected, under section nine [§ 23-2-9], article two of this chapter, to make payments into the surplus fund as provided in that section, and which employees shall have received personal injuries in the course of and resulting from their employment in this State, or in temporary employment without the State as provided in section one [§ 23-2-1], article two of this chapter, or to the dependents, if any, of such employees in case death has ensued, according to the provisions hereinafter made; and also for the expenses of the administration of this chapter, as provided in section two [§ 23-1-2], article one of this chapter.

For the purposes of this chapter the terms "injury" and "personal injury" shall include occupational pneumoconiosis and any other occupational disease, as hereinafter defined, and the commissioner shall likewise disburse the workmen's compensation fund to the employees of such employers as are not delinquent in the payment of premiums for the last quarter in which such employees have been exposed to the hazards of occupational pneumoconiosis or other occupational disease and in this State have contracted occupational pneumoconiosis or other occupational disease, or have suffered a perceptible aggravation of an existing pneumoconiosis or other occupational disease, or to the dependents, if any, of such employees, in case death has ensued, according to the provisions hereinafter made: Provided, that compensation shall not be payable for the disease of occupational pneumoconiosis, or death resulting therefrom, unless the employee has been exposed to the hazards of occupational pneumoconiosis in the State of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards. An application for benefits on account of occupational pneumoconiosis shall set forth the name of the employer or employers and the time worked for each, and the commissioner may allocate to and divide any charges resulting from such claim among the employers by whom the claimant was employed for as much as sixty days during the period of three years immediately preceding the date of last exposure to the hazards of occupational pneumoconiosis. The allocation shall be based upon the time and degree of exposure with each employer.

The first paragraph of the statute directs the commissioner to disburse the fund to personally injured employees (or dependents of such employees if death ensued) of covered employers. Covered employers are defined as those whose premiums have been paid to the fund for the quarter in which the injury occurred.

The second paragraph states that occupational pneumoconiosis and other occupational diseases are included in the terms "injury" and "personal injury" and directs the commissioner to disburse the fund to employees of covered employers. Covered employers are defined as those whose premiums have been paid "for the last quarter in which [their] employees [1] have been exposed to the hazards of occupational pneumoconiosis or other occupational disease and [2] in this State have contracted occupational pneumoconiosis or other occupational disease, or have suffered a perceptible aggravation of an existing pneumoconiosis or other occupational disease. . . ."

That part of the second paragraph marked [1] establishes the first criterion by which employers are judged liable for compensation, to be that they have exposed their workers to the dust.

That part of the second paragraph marked [2] establishes another criterion by which employers are judged liable for compensation, to be that their workers have in this State contracted occupational pneumoconiosis or other occupational disease or suffered a perceptible aggravation of existing pneumoconiosis or other such disease.

Later in the second paragraph the commissioner is allowed to allocate the award among multiple employers by whom claimant was employed for at least sixty days during the three years next preceding his last exposure to pneumoconiosis hazards. "The allocation shall be based upon the time and degree of exposure with each employer."

As to each employer by whom a claimant has been employed for at least sixty days during the three year

period dating back from his last exposure, claimant need only show per *Code*, 23-4-1, that he has occupational pneumoconiosis and that he was during that employment exposed to the hazards. In addition, he must satisfy the specific statutory time limitations prescribed in *Code*, 23-4-15, and 23-4-15b, to perfect a claim.[2]

The steel company argues that Maynard was unable to show that his pre-existing occupational pneumoconiosis was perceptibly aggravated while he was in its employ for five months, and therefore it should not be charged for any part of his compensation. It cites *Turner v. State Compensation Commissioner*, 147 W. Va. 1, 123 S.E.2d 880 (1962), *aff'd on rehearing*, 147 W. Va. 145, 126 S.E.2d 379 (1962), and *Garges v. State Compensation Commissioner*, 147 W. Va. 11, 123 S.E.2d 886 (1962), *aff'd on rehearing*, 147 W. Va. 188, 126 S.E.2d 193 (1962).[3] These cases held that an employer cannot be charged with an award for an occupational disease (silicosis) unless the claimant can demonstrate that the disease was actually contracted or perceptibly aggravated while the claimant was working for the employer whose account is charged.

---

[2] *Code*, 23-4-15, provides that "[t]o entitle any employee to compensation for occupational pneumoconiosis under the provisions hereof, the application therefor must be made on the form or forms prescribed by the commissioner and filed in the office of the commissioner within three years from and after the last day of the last continuous period of sixty days or more during which the employee was exposed to the hazards of occupational pneumoconiosis. ..."

*Code*, 23-4-15b, requires the commissioner to determine "whether the claimant was exposed to the hazards of occupational pneumoconiosis for a continuous period of not less than sixty days while in the employ of the employer within three years prior to the filing of his claim, whether in the state of West Virginia the claimant was exposed to such hazard over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure thereto and whether the claimant was exposed to such hazard over a period of not less than ten years during the fifteen years immediately preceding the date of his last exposure thereto."

[3] These cases were decided according to *Code*, 23-4-1 (1953), as it existed at the time the claims were filed. The section has not been changed materially.

In *Turner*, claimant's silicosis was observable in x-rays taken in 1952 while he apparently was employed by Milburn By-Products as a coal loader. He filed no claim then, but did on July 8, 1959. In the interim he worked for New River and Pocahontas Consolidated Coal Company as a coal loader until March 26, 1958 and for Pine Top Coal as a hand loader from February 5, 1959 to April 1, 1959. X-rays in 1959 and 1960 revealed no aggravation of the disease beyond the 1952 stage.

The Court held that he could not recover because he could prove no perceptible aggravation of the disease during his employment with either of the companies he worked for within the two years (the the time period of *Code*, 23-4-1) before his filing date. It also held he was not entitled to recover on the basis of his Milburn By-Products job because his employment there ended before the two year period.

Judge Given, joined by Judge Berry, reluctantly concurred in the Court's opinion in *Turner*. Referring to *Code*, 23-4-1, he noted that "[i]t is significant that the allocation or charge 'shall be based upon the time and degree of exposure', not upon any proportional degree of aggravated disability." 123 S.E.2d at 885. This distinction is the matrix from which our interpretation of *Code*, 23-4-1, departs from *Turner*. We believe that under *Code*, 23-4-1, an employer is chargeable if he exposes his employees to the hazards of occupational pneumoconiosis and the employee contracts the disease in this State, or his pre-existing condition is perceptibly aggravated in this State.

Judge Given felt constrained to concur in the *Turner* opinion because he believed the case was controlled by *Kelly v. State Compensation Commissioner* (No. 10793 May 1, 1956), an unpublished order that cited no precedent and to which two judges dissented. The principles and rationale of *Turner* had little or no support in the law prior to the *Turner* opinion itself.

In *Garges, supra,* the claimant worked for New River Company from 1928 until November, 1956 and for Wind-

ing Gulf Coals, Inc. from February, 1957 to September 1958. He filed his claim August 18, 1959. Our Court relied principally on *Turner* and held that claimant could not show that his silicosis was any worse while he worked for Winding Gulf Coals, Inc., than it had been when he worked for New River Company. Therefore, since his only employer during the statutory period (then two years) had been Winding Gulf, he could not recover. Judges Given and Berry concurred for the same reasons assigned in their *Turner* concurrence.

We expressly overrule *Turner* and *Garges*. Under the relevant provisions of *Code*, 23-4-1 [1971], *et seq.*, there is no requirement that an employee, upon filing an initial claim for occupational pneumoconiosis where he has worked for multiple employers, must prove to what extent or degree each employer has contributed to his disease.

The necessity of a claimant proving perceptible aggravation of a pre-existing occupational pneumoconiosis will only arise if he seeks additional disability compensation over and above that which he has received from a previously adjudicated occupational pneumoconiosis award. Subsequent claims for increased disability compensation based on perceptible aggravation will be treated in the same statutory manner as the initial claim, with employer liability based on exposure, proof of the aggravation, and claimant's satisfaction of the applicable time requirements. *Code*, 23-4-1, -15, -15b.

Having established that United States Steel is a chargeable employer herein, we consider the other question quite properly raised by it relating to the percentage apportionment of the award.

The record reveals that the commissioner calculated the number of days claimant worked for United States Steel during the three years preceding his last exposure to penumoconiosis hazards, and the number of days during that three years that he worked for Crystal Block. He reduced these to percentages of the total number of

days in the three year period and charged the award to the respective company accounts at those percentages.

In *Pentrich v. Dostal Foundries & Employers Mutual*, 28 Mich.App. 263, 184 N.W.2d 316 (1971), the Michigan Supreme Court held that once an employer is found to be liable, by having had the disabled claimant work for him sixty days during the ten years (the more liberal Michigan statutory time period) before the date the employee was last subjected to the conditions resulting in disability, the award should be apportioned on the basis of the total work time with each employer, not just that part which was within the ten year period. *See also*, 4 Larson, Workmen's Compensation Law § 95.32.

We hold that in allocating an award among several chargeable employers "based upon the time and degree of exposure with each employer," the commissioner should consider the entire period of employment with each employer prior to the date of last exposure and not merely that period of time falling within the three years preceding the date of last exposure.

United States Steel demonstrated that it has effected significant dust-abatement procedures since it assumed Crystal Block's Thatcher mining operation and that Maynard's hazardous exposure while in United States Steel's employ was less than had been his exposure with Crystal Block. The commissioner erred in failing to consider this evidence of dust abatement tending to affect the degree of exposure in apportioning the award.

We find that the commissioner and the Workmen's Compensation Appeal Board were correct in holding both Crystal Block and United States Steel to be chargeable employers; but erred in the allocation of the award between them. We therefore vacate the allocation and remand this case to the commissioner to be reapportioned consistent with the mandate of *Code*, 23-4-1, based upon the evidence of time and degree of exposure in the record.

*Reversed and remanded.*